*Margin note:* Bennett, &c. vs. Devlin, &c.

not be permitted to recover the value of the goods. The law implies no assumpsit to pay for goods so sold in violation of law.

## Bennett, &c. vs. Devlin and others.

APPEAL FROM LOUISVILLE CHANCERY COURT.

*Margin:* Case 36.

Pet. Eq.

1. The statute of limitations where the remedy is sought must govern, not where the parties reside.

2. Where a debtor, a surety, leaves the state after the debt is due, his occasional return for short periods, without giving the creditor a reasonable opportunity to bring suit, will not prevent the creditor from the benefit of the exception in the act of 1838. (3 *Statute Law*, 399; *Ridgeley vs. Price*, 16 *B. Monroe*, 409.)

3. A cause of action properly accrues upon a note when it is due, though a debtor may not then be in reach of the process of the courts of the country.

4. A surety who has removed from the state, though before the note or debt became due, cannot avail himself of the benefit of the act of

BENNETT, &c.
        vs.
DEVLIN, &c.

1838 for the benefit of sureties, (3 *Statute Law*, 599,) if suit be brought after his return to the state, within the time prescribed by the statute after the removal of the obstruction to suit occasioned by his absence.

Case stated.

This suit was brought by Bennett & Co. against Devlin & Whelan, Bolton, Kelly, Ball and Criss, attaching some land and stock in the Texas Land and Emigration Company, of defendant Bolton, and some real property in Louisville alledged to belong to Devlin, to satisfy four notes executed in 1843, payable in six, twelve, eighteen and twenty-four months after date. Kelly, Ball and Criss claim to be the *bona fide* owners of the stock, and Whelan denies the execution of the notes, and Devlin relies upon the fact that he is only surety in the notes, and is released under statute of 1838 for the relief of sureties.

It appears, that after the two first notes fell due, Devlin removed to New York, where he has resided ever since; but his removal was before the two last notes fell due. That he has only been occasionally in Kentucky since, and for short periods.

The chancellor dismissed the petition as to Whelan, Kelly, Ball and Criss, and rendered judgment against Devlin for the two first notes which fell due, and dismissed the plaintiffs' petition as to the two last notes falling due—from which judgment Bennett appealed.

*J. G. Barret* for appellants—

1. The chancellor erred in releasing the stock in the "Texas Land and Emigration Company," alledged to be the property of Henry Bolton, from liability.

2. Also, in applying the limitation to the demand upon the last two notes which fell due, and releasing Devlin from responsibility.

1. The stock in the Texas Land and Emigration Company belonged to Henry Bolton individually. The proof in the cause does not sustain the claim set up to it by Kelly, Ball & Co., who claim to be *bona*

*fide* purchasers thereof. It was not sold by the marshal, under the decree, as alledged. The proof fails to show any sale and delivery.

2. The four notes sued on were given as the price of the steamboat Embassy, sold by plaintiffs to the defendants. It is proved that the defendant Devlin signed the notes as surety. He insists that under the statute of 1838 he is released from liability. The chancellor decided that he left the state after the two first notes which fell due were payable, and that the plaintiffs recover upon them; but as to the two notes last due, that the plaintiff had lost his remedy against Devlin by negligence in bringing his suit.

The defendant Devlin left the state of Kentucky before the two last notes fell due and a cause of action had accrued thereon, and went to the state of New York, where he has resided ever since. The proof does not show that the plaintiff ever knew of his temporary return to Kentucky at any time after the notes fell due. It is quite certain that at the institution of this suit he had been absent from the state for seven years. Shall Devlin, under these circumstances, be permitted to avail himself of the provisions of the act of 1838, and claim his release? It is admitted that unless the plaintiffs show themselves to be within some one of the exceptions in the statute, that they cannot recover. The place of the contract was Louisville, Kentucky, and there it is sought to be enforced, and the laws of Kentucky must control. The act of 1838 has this provision: "That if any person or persons, defendant or defendants to any of the aforesaid actions, shall abscond or conceal themselves, or by removal out of the country or the county where he or they reside, where such cause of action accrued, or by any other indirect way or means defeat or obstruct any person or persons who have title thereto, from bringing or maintaining any of the aforesaid actions within the respective times limited by this act, then, and in such case, such

Bennett, &c.
*vs.*
Devlin, &c.

defendant or defendants are not to be permitted to plead this act," &c.

Devlin having left the state before the two last notes fell due, there was no right of action here—there was no obligation to sue—his removal had relieved the creditor from his obligation to sue. No right of action had accrued—no man has a cause of action until there is some person whom he can sue. (*Douglass vs. Forest*, 4 *Bing*. 686.) By Devlin leaving the state he obstructed the plaintiff in bringing his suit which is within one of the exceptions. No obligation rested on the plaintiff to pursue Devlin to New York and sue him there. (2 *Greenleaf's Ev.*, part 4, section 437 ; *Angel on Lien*, 251.)

The statute 21 James I, allowed of no exceptions on account of absence from the realm, but that of Ann had a proviso to that effect. The statute of New York has a similar provision. And the proviso in our statute in regard to removal out of the *country*, is the same in effect as out of *the state*. (See *Ruggles vs. Keeler*, 3 *John. Rep.*, 264 ; *Bulger vs. Roche*, 11 *Pick*. 35.) The plaintiff was certainly obstructed in bringing his suit, within the meaning of the statute, by his absence from the state, and should not be released.

*Bullitt & Smith* for appellees Kelly, Ball and Criss—

The facts in the record show very satisfactorily that Bolton was not the owner of the stock which it is sought to render liable for plaintiffs' demand, but that it belonged to Kelly, Ball and Criss. It is not alledged that they held it in trust for Bolton, nor that they had combined with Bolton to defeat his creditors.

Bolton proves the transfer of the stock, and there is no conflict of testimony on that point. The decree of the chancellor is right.

*Murphy* and *S. Williams* for appellees Devlin & Whelan—

Only two questions arise in this case, so far as appellee Devlin is concerned:

1. On the provisos of the 6th section of the statute of 1838 in regard to the liability of sureties.

The statute is to be so construed as to carry into effect the intention of the legislature. It is not pretended in the pleadings that there was any attempt to evade the service of process. There was no cause of action until the notes fell due, and they were not due when Devlin went to New York.

The true construction of the act, it is insisted, is that, to bring the party within the saving in the exception, the removal must take place after the debt falls due—after a right to sue exists. There cannot be said to be any obstruction to suit by a removal which takes place before any cause of action exists. (See *Mansel's adm'r vs. Israel*, 3 *Bibb*, 510.)

It was the duty of the creditor to sue the principal, and make his debt, who was good when the debts fell due. Having failed in this, the chancellor properly decided that the surety was exonerated, and the suit dismissed as to Whelan.

2. It is insisted that the statute of limitations of New York should govern the case. By that statute suits on notes not under seal, are limited to six years. Neither the plaintiff nor defendant are citizens of Kentucky. The defendant Devlin is a citizen of New York, and was so when the note fell due.

Judge STITES delivered the opinion of the court:

October 6.

There is no evidence in the record to overcome the answer of Whelan, and the judgment in his favor cannot be disturbed.

Neither is there sufficient ground to disturb the judgment in favor of Kelly, Ball and Criss.

Although the transfer of the stock is not exhibited, Bolton proves positively that, prior to this suit, he

BENNETT, &c.
vs.
DEVLIN, &c.

sold and transferred it to them for a valuable consideration, and in payment of a debt. No witness contradicts him, and no fact appears that warrants the inference that his statement is not correct. Kelly, Ball and Criss, so far as the record shows, are the *bona fide* purchasers and holders of the stock, and the petition, as to them, was properly dismissed.

The more important question arises as to the liability of Devlin. He is surety on the notes, and relies on the statute of limitations of 1838, of this state, and those of New York.

The four notes sued on matured severally on the 15th July, 1843, 15th October, 1843, 15th January, 1844, and 15th July, 1844. They were made in Louisville, where the parties then resided, and where Devlin continued to reside until the 9th of January, 1844. He then removed to New York, and except upon occasional visits of brief duration, has since been absent from this state, and has likewise claimed to be a citizen of New York. It also appears that the principals in the notes remained citizens of Louisville and solvent for some time after the notes matured, though now insolvent and non-residents. And also, that until this suit, no action was ever brought against them for the money.

1. The statute of limitations where the remedy is sought, must govern, not where the parties reside.

With regard to the effect of the statutes of New York, in behalf of the surety, it is sufficient to say, that by the law, as well settled and in force, prior to the adoption of the Revised Statutes, the statutes of limitations where the remedy is sought, and not those of the country where the parties reside, must control. The cause of action here, existed before 1852, and the Revised Statutes do not apply. So that, whatever the law of limitation may be in New York, it cannot avail in this case.

By the act of 1838, (3 *Statute. Law*, 599,) the failure of the holders of the notes to sue within seven years next after the right of action accrued thereon, has released Devlin from liability, unless by his removal and continued absence from the state he has

brought himself within the savings and exceptions contained in the sixth section of the act.

It is therein provided, " that if any person or persons, defendant or defendants to any of the actions aforesaid, shall abscond or conceal themselves, or by *removal out of the country or the county where he or they reside, where such cause or action accrued, or by any other indirect ways or means defeat or obstruct any person or persons*, who have title thereto, from bringing or maintaining any of the aforesaid actions within the respective times limited by this act, then, and in such case, such defendant or defendants are not to be admitted to plead this act in bar," &c.

There can be no doubt that the cause of action upon the two notes first due, accrued whilst Devlin resided in this state, and none that his removal and continued absence from it was an obstruction to the bringing and maintaining an action on them, within the words and meaning of the exceptions; and as to those notes the judgment against him was proper, unless his occasional visits to Kentucky, in the meantime, relieved him from the exceptions of the act.

It does not appear when and how long he was in Kentucky, nor that the holders of the notes had a reasonable opportunity of bringing suit on these notes against him in this state, and, as held by this court, in *Ridgely vs. Price, Mss. Opinion, Winter Term*, 1855, such occasional and short visits of a debtor to the state, ought not to deprive a creditor of the benefit of the exceptions of the statute of limitations.

The chief controversy, however, is with regard to the last notes due, and on which the chancellor refused to give judgment.

In behalf of the holders of the notes, it is contended that the exceptions of the statute likewise saves their right of action on them. They maintain, 1st. That the statute had not commenced running upon those notes, notwithstanding their maturity, until Devlin came to the state and offered them a chance

2. Where a debtor, a surety, leaves the state after the debt is due, his occasional return for short periods, without giving the creditor a reasonable opportunity to bring suit, will not prevent the creditors from the benefit of the exception in the act of 1838. (3 *Statute Law*, 599; *Ridgeley vs. Price*, 16 *Ben. Monroe*, 409.)

to sue; because, as they contend, there was properly no cause of action until there was somebody to sue; and, 2d. That if there was a cause of action when the notes fell due, the removal of the debtor before that time, and continued absence afterwards was a complete obstruction, within the spirit and meaning of the exceptions; as much so as if such removal had occurred after the maturity of the notes.

For Devlin it is strenuously insisted that the cause of action accrued when the notes fell due, without regard to his whereabouts, and that the statute began to run in his favor from that moment. It is also urged that, upon the authority of *Mansell's adm'r vs. Israel*, 3 *Bibb*, 510, and by the construction given in that case to the savings of the act of 1796, in favor of non-residents, (2 *Statute Law*, 1138,) the exceptions in this act cannot be properly applied, except in cases where the removal is *after* the accrual of the cause of action; and also, that the removal here is not an obstruction, within the meaning of the act.

We are not aware that the question now raised has been decided by this court. The question in *Mansell's adm'r vs. Israel, supra*, involved a construction of the 8th section of the act of 1796, and not that section saving the rights of resident creditors against absconding and non-resident debtors, and the language there used *in arguendo*, in passing upon the sufficiency of the replication and rejoinder of the plaintiff, did not apply to the latter section of that act, nor is it applicable here.

Neither does the case of *Edwards vs. Davis*, 4 *Bibb*, 211, dispose of the present question. So that, whether a removal *after* the maturity of the notes, and continued absence from the state for the space of seven years, without suit thereon in or out of the state, is a bar in behalf of the surety, must depend wholly upon a fair and proper construction of the language of the exceptions.

3. A cause of action properly

Notwithstanding the case of *Douglass vs. Forrest*, 4 *Bingham*, in which it is said "that no cause of ac-

tion exists until there is some one that can be sued," we are inclined to the opinion that the cause of action, upon these notes, accrued upon their maturity and non-payment. The demand was then enforceable in any court having jurisdiction of the person or property of the defendant, for the enforcement of such demands, and a valid and subsisting cause of action then accrued.

But do any of the exceptions apply to, and embrace this case? It will be seen that they protect creditors against the effect of the preceding sections of the act; 1st, where sureties abscond and conceal themselves; 2d, where they remove out of the county or country *where* such causes of action accrued; and 3d, where, *by any other indirect ways or means*, they shall defeat or obstruct any person entitled thereto from bringing or maintaining any of the actions referred to in the other sections of the act.

It is not pretended that Devlin absconded or concealed himself, nor that his removal was *after* the notes in question had matured, or a cause of action thereon had accrued; so that the case, if within the exceptions at all, must come within the comprehensive language of the third and last.

The policy of the law was to protect innocent sureties against loss resulting from the *laches* of creditors, or long indulgence granted to principals, by creditors relying alone upon the solvency of the surety, without the assent of the latter, and frequently to his prejudice, if not ruin; but not to sureties placing themselves beyond the reach of their creditors or otherwise obstructing them in the collection of their debts. And it was to exclude this latter class from the benefit of the preceding sections of the act, and to relieve creditors who had been guilty of no *laches* or improper indulgence, but who could not, because of the acts of the surety, sue within the prescribed time, that the savings were provided.

Two of the most ordinary and usual classes of obstructions to suits are mentioned in terms, viz: ab-

BENNETT, &c.
*vs.*
DEVLIN, &c.

accrues upon a note when it is due, though the debtor may not then be in reach of the process of the c'rts of the country.

sconding and concealment, and removal from the place of residence where the action accrued ; but in order to embrace all and every variety of obstructions that could occur, the exception excludes from the benefit of the act those defendants who, "by any other indirect ways or means shall defeat and obstruct such actions," &c.

It is said, however, that the removal of the surety in this case was public and open, and therefore not one of the " indirect ways or means " contemplated by the savings.

To exclude it upon this ground, would be tantamount to saying that an open and public removal, directly made, and absence from the state for the required time, for the purpose of defeating the action, should relieve a surety from the exceptions, and give him the benefit of the act, when such removal in any other less direct manner—though having precisely the same effect in defeating the action—should exclude him from the benefit of the limitations and bring him within the exceptions.

4. A surety who has removed from the state, though before the note or debt became due, cannot avail himself of the benefit of the act of 1838 for the benefit of sureties, (3 *Stat. Law*, 599,) if suit be brought after his return to the state within the time prescribed by the statute after the removal of the obstruction to suit occasioned by his absence.

We do not so understand the exception, but regard it as embracing, and intended to embrace, every obstruction, by removal from the state or otherwise, before or after the accrual of the action, that has the effect of defeating or hindering the bringing or maintaining an action against the surety ; and we are of opinion that when such obstruction has been so interposed by a surety, that he cannot avail himself of the benefit of the act against an action when brought within the time prescribed after the removal of such obstruction.

The only enquiry then to be made is, was the creditor obstructed in bringing and maintaining his action by the removal before, and continued absence of the debtor after the right of action accrued?

No personal judgment could have been had for want of service of process, and it does not appear that the debtor had, within the seven years next after the notes became due, any property in the state

liable to attachment, if proceeding by attachment were necessary to prevent the running of the statute, which is not admitted.

What then could the creditor do? It was certainly not his duty to pursue his debtor out of the state, to save himself from the effect of the statute, and he could neither sue him within it by proceeding *in personam* or *in rem*. There was, during the seven years following the maturity of the notes, neither person nor property in the state. Yet when his debtor obtains property and he can sue, he is to be told that for not suing before, his debt is barred; or, in other words, although guilty of no *laches*, and prevented by the removal and absence of his debtor from suing, he is, because he did not sue, cut off by the statute.

Such is not the law. The removal and absence of the surety in this case was, in our opinion, an obstruction within the meaning and provision of the exceptions, and he cannot avail himself of the act in question, to defeat the judgment upon the two notes named, and he should have been held liable thereon.

Judgment as to Whelan, Kelly, Ball and Criss is affirmed, and as to Devlin is reversed, and cause remanded for a judgment and other proceedings, in conformity with this opinion.

[A petition for a rehearing was filed, but overruled by the court.]